IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

MICHELLE GUTIERREZ,

    Plaintiff,

v.                                                                         No. Civ. 19-124 JCH/JFR

ROBERT WALKER/PRESIDENT & CEO,

    Defendant.

## MEMORANDUM OPINION
## AND
## FINDINGS OF FACT AND CONCLUSIONS OF LAW

        This matter is before the Court on the *Motion for Default Judgment* (ECF No. 99) filed by Plaintiff Michelle Gutierrez ("Plaintiff" or "Gutierrez") on July 7, 2021. Plaintiff requests that the Court enter judgment against Defendant Robert Walker ("Walker") for sex discrimination against Plaintiff in violation of Section 703(a) of Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 1981a; for retaliation against Plaintiff in violation of Title VII; for retaliatory discharge in violation of New Mexico tort law; and for invasion of privacy -false light. (*See* Pl.'s Mot. 2, ECF No. 99). On August 26, 2021, this Court held a hearing on the motion by Zoom videoconference in which Plaintiff appeared through her attorney, R. Michael Hughes. Defendant Walker has not entered his appearance or otherwise answered this lawsuit. The Court, having considered the motion, the evidence, the testimony, the arguments of counsel, the applicable law, and otherwise being fully advised, will grant the motion in part and deny it in part. The Court will enter judgment for Plaintiff and against Defendant Walker on her claims for retaliatory discharge in violation of New Mexico tort law and for invasion of privacy – false light. The Court, however, will deny the motion to the extent Plaintiff seeks an entry of judgment on her Title VII claim against Defendant Walker

because, as a matter of law, Title VII does not permit claims for individual liability against a person. Accordingly, the Court concludes that Defendant Walker is in default, the motion for default judgment should be granted, and judgment should be entered in favor of Plaintiff in the amount of $182,000.00.

I. ALLEGATIONS IN PLAINTIFF'S AMENDED COMPLAINT

Defendant Jim Henning ("Henning") was the founder and owner of United Restaurant and Hospitality Consultants, also known as United Restaurant Hospitality Group ("United"). (*See* Am. Compl. ¶¶ 4, ECF No. 77.) Walker was the President and CEO of United, which did business in New Mexico as Marcello's Chophouse, or Marcello's Chophouse, LLC ("Marcello's"). (*Id.*) Marcello's, United, Henning, and Walker did business as an integrated enterprise with common management by Henning, Walker, and United. (*Id.* ¶¶ 4-5.) Defendants employed Plaintiff at Marcello's. (*Id.* ¶ 14.)

Defendants sent Gutierrez to Peoria, Illinois, to train servers. (*See id.* ¶¶ 14-16.) When she arrived for this out-of-state training for servers, Gutierrez discovered she would be sharing a luxury cabin by the lake with Henning, Walker, and another male individual. (*See id.* ¶¶ 14-15.) While there, Walker made unusual comments to Gutierrez, flirted with her, drank copious amounts of alcohol, and encouraged her to drink with him. (*Id.* ¶ 17.) On November 5, 2015, Walker made unwanted sexual advances toward her by putting his head in her lap while they watched a football game, and he put his hands under her thighs. (*Id.* ¶ 19.) Gutierrez immediately got up and went to her room. (*Id.*)

On November 14, 2015, Walker drank a lot of alcohol, and after Gutierrez went to bed, he sexually assaulted her. (*Id.* ¶ 20.) She awoke to Walker grinding against her in his underwear. (*Id.*) She immediately pushed him out of her bed and ran out of the room, shaken and distraught. (*Id.* ¶

21.) When she returned to her room, Walker was still there and made additional sexual advances towards her. (*Id.* ¶ 22.) She rebuffed him, told him to get out of her room, slammed the door in his face, and locked the door to keep him from coming back in. (*Id.*) The next day, Walker was still intoxicated when he went to work, and told Gutierrez that she should not tell anyone about his sexual assault the prior evening because it "would not be good for her position." (*Id.* ¶ 23.)

Towards the end of November 2015, Gutierrez moved into a condominium closer to the restaurant in Peoria owned by one of the owners of the restaurant. (*Id.* ¶ 24.) When Walker returned to New Mexico for Thanksgiving, Henning came to Peoria to run operations at the restaurant. (*Id.* ¶ 25.) Henning asked Gutierrez if she would be interested in moving to Peoria permanently. (*Id.*)

On November 29, 2015, Henning told Gutierrez that she had to move out of her bedroom and sleep on the couch in the living room of the condominium. (*Id.* ¶ 26.) On December 8th, Walker stormed into Gutierrez's room in the middle of the night and made sexual overtures to her. (*Id.* ¶ 27.) She again rebuffed his advances and had to kick him out of her room. (*Id.*)

On December 10, 2015, Gutierrez first reported to upper management that Walker sexually assaulted her, and she was not the first female employee to report Walker for sexually inappropriate behavior. (*Id.* ¶ 29.) Walker began acting more erratically, accusing Gutierrez of not being committed to the restaurant, and becoming increasingly critical of her every move. (*Id.* ¶ 30.) On December 13th, Walker told her that she would be higher up in the company if she slept with him. (*Id.* ¶ 31.) The next day he tried to send her home to Albuquerque, but Henning talked him out of it, and Henning told Gutierrez to be a "good girl" and try to make Walker happy. (*Id.* ¶ 32.)

In the middle of December 2015, Gutierrez agreed to go home to New Mexico for a couple weeks. (*Id.* ¶ 33.) After returning to New Mexico, she met with Henning and Robert Noland, and Henning made unfounded accusations against her and her character, obviously from false

information provided by Walker. (*Id.* ¶ 35.) Gutierrez informed them that Walker sexually assaulted her. (*Id.*) Henning screamed at her and threatened her that if she told anyone else about these accusations she would "definitely not have a job." (*Id.* ¶ 36.) He said, however, that he would look into her allegations against Walker. (*Id.* ¶ 37.)

On January 8, 2016, Gutierrez again met with Henning and Mr. Noland. (*Id.* ¶ 38.) At that meeting, Henning terminated her employment. (*Id.*) Both Henning and Walker made false statements about the reasons for her termination that disparaged her character and conduct; statements that were highly offensive to a reasonable person and that gave her highly objectionable publicity. (*Id.* ¶¶ 70-72.)

## II. PROCEDURAL BACKGROUND

Plaintiff filed suit against Defendants Marcello's, United, Henning, and Walker for Title VII sex discrimination (Count I), Title VII retaliation (Count III), Retaliatory Discharge (Count V), Invasion of Privacy – False Light (Count VII). Plaintiff seeks compensatory, statutory, and punitive damages. (*See id.* ¶¶ 67-68, 73-74.) Defendants Marcello's, Henning, and United filed Answers to the amended complaint. (*See* Answers, ECF Nos. 80 & 84.) The case subsequently settled with respect to all parties except Walker. (*See* Clerk's Minutes, ECF No. 93.)

A summons for Robert Walker was issued on May 3, 2021. (*See* Proof of Service, ECF No. 96 at 1 of 3.) On May 7, 2021, delivery of the summons was made by U.S. Post Service certified mail, with return receipt, on Robert Walker at his address in Cibolo, Texas. (*See id.* at 3 of 3.)[1] According to the return receipt signed by the postal agent, the documents were received by "R Walker" on May 7, 2021. (*Id.*) The summons notified Walker to serve an answer or motion "on the plaintiff or plaintiff's attorney" with the listed name and address of plaintiff's counsel. (*Id.* at

---

[1] In July and August 2020, service was attempted on Walker at an address in Colorado, but the federal marshal was unsuccessful. (*See* Process Receipt and Return, ECF No. 53.)

2 of 3.) The summons further stated: "If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court." (*Id.*)

In a letter dated May 20, 2021, and signed by Robert Walker, Walker stated, "I have received your summons and I am responding to the allegations." (Letter, ECF No. 103 at 5 of 5.) Walker then denied any unprofessional conduct towards Plaintiff, as described by the summons; stated he did not terminate her employment (although acknowledging he communicated her behaviors to Henning), and asserted he has never owned Marcello's or United. (*Id.*) Walker stated in the letter that he was including witness statements collected in United's original investigation. (*Id.*) Walker, however, has not filed an answer to Plaintiff's complaint or a motion with the Court, and the deadline to do so has long since passed.

On July 5, 2021, Plaintiff filed an application for default (ECF No. 97), and the next day, the Clerk entered default as to Robert Walker. (Entry of Default, ECF No. 98.)

### III.    LEGAL STANDARD

A party who defaults concedes the truth of the factual allegations in the complaint as establishing liability. *See In re The Home Restaurants, Inc.*, 285 F.3d 111, 114 (1st Cir. 2002). By declining to participate in the judicial process, the non-responding party gives up his right to contest liability. *Id. See also U.S. v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989) ("As a general rule, a default judgment establishes, as a matter of law, that defendants are liable to plaintiff as to each cause of action alleged in the complaint."). Under Federal Rule of Civil Procedure 55(b)(2), the Court may conduct hearings when, to enter or effectuate judgment, it needs to conduct an accounting, determine the amount of damages, establish the truth of an allegation by evidence, or investigate any matter. Fed. R. Civ. P. 55(b)(2)(A)-(D).

Nevertheless, a district court has discretion to deny default judgment when the plaintiff's claims clearly lack merit. *See Pinaud v. Count of Suffolk*, 52 F.3d 1139, 1152 n. 11 (2d Cir. 1995) (concluding that district court did not err in denying motion to default given large sum sought by plaintiff, disputable merits of his claims, and lack of any prejudice from failure to answer); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092-93 (9th Cir. 1980) (finding no abuse of discretion in district court's declining to enter default judgment given lack of merit in substantive claims). "A district court may not enter default judgment based on a complaint not well-pleaded." *Sampson v. Lambert*, 903 F.3d 798, 806 (8th Cir. 2018). *See also Surtain v. Hamlin Terrace Foundation*, 789 F.3d 1239, 1244-45 (11th Cir. 2015) ("[W]hile a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact, he is not held to admit facts that are not well-pleaded or to admit conclusions of law. Entry of default judgment is only warranted when there is a sufficient basis in the pleadings for the judgment entered.") (internal quotations and citations omitted). A party, thus, is not entitled to default judgment as a matter of right, even when the defendant is technically in default, where the allegations in the complaint, even if true, were insufficient to establish liability. *Lewis v. Lynn*, 236 F.3d 766, 767-68 (5th Cir. 2001) (refusing to overturn district court ruling denying motion for default judgment).

**IV.   FINDINGS OF FACT AND CONCLUSIONS OF LAW**

    **A. Jurisdiction**

A default judgment is void if there is no personal jurisdiction over the defendant. *Hukill v. Oklahoma Native American Domestic Violence Coalition*, 542 F.3d 794, 797 (10th Cir. 2008). Service of process provides the means for a court to assert jurisdiction over the person of the party served. *Id.* "Defects in personal jurisdiction … are not waived by default when a party fails to appear or respond." *Williams v. Life Sav. and Loan*, 802 F.2d 1200, 1202 (10th Cir. 1986). "Thus,

when entry of a default judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *Id.* at 1203 (holding that a district court may not dismiss an action *sua sponte* for lack of personal jurisdiction except when a default judgment is to be entered).

Federal Rule of Civil Procedure 4(e)(2)(A) provides for service by "delivering a copy of the summons and of the complaint to the individual personally." Fed. R. Civ. P. 4(e)(2)(A). Rule 4(e)(1) also provides for service by following state law in courts of general jurisdiction in the state where the district court is located or where service is made. Fed. R. Civ. P. 4(e)(1). New Mexico permits personal service on the defendant, and if the defendant refuses to accept service, by leaving the process at the location where the defendant has been found. N.M. R. Civ. P. 1-004(F)(1)(a). Service may also be made on an individual by mail so long as the envelope is addressed to the named defendant and that the defendant or a person authorized by appointment, by law, or by this rule to accept service of process upon the defendant "signs a receipt for the envelope or package containing the summons and complaint." N.M. R. Civ. P. 1-004(F)(1)(b) & 1-004(E)(3). "A proper mailing of the summons and complaint raises a rebuttable presumption of due delivery to the addressee." *Nikwei v. Ross School of Aviation, Inc.*, 822 F.2d 939, 941 (10th Cir. 1987).

The certified mail receipt indicates that Robert Walker received the copy of the summons and complaint through certified mail. (*See* Certified Mail Receipt, ECF No. 96 at 3 of 3.) The signature line is signed with "Agent" marked, indicating that the agent, not Robert Walker, signed the receipt. However, in the "Received by" box, the name "R Walker" is printed with date of receipt May 7, 2021. (*See id.*) Moreover, Robert Walker sent plaintiff's counsel a letter stating that he received the summons. The Court therefore finds, based on the record, that service by mail was effectively and properly made on Defendant Walker, and he has actual notice of the summons and

complaint. *Cf. Moya v. Catholic Archdiocese of New Mexico*, 1988-NMSC-048, ¶ 12, 107 N.M. 245 (concluding that reinstatement of default was proper relief where summons and complaint were left on defendant's front porch door and defendant read them because service was in manner reasonably calculated to bring proceeding to defendant's attention).

Despite sending a letter to plaintiff's counsel, Walker did not follow the dictates of the summons to also file his answer or motion with the court in the time required by the Federal Rules. Because the deadline for filing an answer to the complaint has passed and Defendant Walker has not answered the complaint or otherwise attempted to defend the suit in this Court, entry of default is proper. Defendant Walker, by defaulting, concedes the truth of the factual allegations in the complaint. The Court therefore finds all the non-conclusory factual allegations in the Amended Complaint to be true.

### A. Count I – Sex Discrimination – Title VII and Count III – Retaliation – Title VII

Title VII precludes personal capacity suits against individuals, so individual defendants may not be held liable for discrimination or retaliation in violation of Title VII. *See Haynes v. Williams*, 88 F.3d 898, 901 (10th Cir. 1996) ("Accordingly, we continue to adhere to this court's established, pre-amendment rule that personal capacity suits against individual supervisors are inappropriate under Title VII."). *See also Fuller v. Department of Children and Families*, 805 F. App'x 601, 605 (10th Cir. Mar. 30, 2020) (unpublished) ("In fact, *Haynes* and *Sauers* make clear, at least for purposes of Title VII, that individual supervisors cannot be held personally liable and that personal-capacity suits against fellow employees are inappropriate.…Thus, in light of *Haynes'* and *Sauers'* treatment of this issue in the analogous Title VII context, we are not persuaded that the district court erred in concluding that the ADEA permits suit only against employers and not against supervisory employees."); *DeFreitas v. Horizon Inv. Management Corp.*, 577 F.3d 1151,

8

1152 & 1162 n.2 (10th Cir. 2009) (relying on *Haynes* in noting that plaintiff did not have a claim against president of company under Title VII because statutory liability is appropriately borne by employers, not individual supervisors).

Plaintiff seeks damages against Defendant Walker in his personal capacity in Counts I and III. Consequently, as a matter of law, the Court cannot grant damages to Plaintiff against Defendant Walker on her Title VII claims. These claims against Defendant Walker must be dismissed.[2]

### B. Count V – Retaliatory Discharge

To prevail on a retaliatory discharge claim, an employee must (1) identify a specific expression of public policy her termination violated; (2) show that she acted in furtherance of the clearly mandated public policy; and (3) demonstrate that the employer terminated her employment as a result of those acts. *Sherrill v. Farmers Ins. Exchange*, 2016-NMCA-056, ¶ 9, 374 P.3d 723. A plaintiff may bring a claim for the tort of retaliatory discharge based on her termination for seeking relief under federal anti-discrimination statutes, despite remedies provided in these other statutes. *Cf. Gandy v. Wal-Mart Stores, Inc.*, 117 N.M. 441, 443-45, 872 P.2d 859 (1994) (holding that plaintiff may bring retaliatory discharge tort when she alleges that she was fired for having sought relief against her employer under NMHRA*); Cordova v. New Mexico*, 283 F.Supp.3d 1028, 1047-48 (D.N.M. 2017) (denying motion to dismiss wrongful termination claim based on allegations that defendants' actions violated FMLA). A corporate director or officer who directly or actively participates in the commission of the tortious act of the corporation may be liable along with the corporation. *See Stinson v. Berry*, 1997-NMCA-076, ¶ 17, 123 N.M. 482. Where the officer or director directed, controlled, approved, or ratified the activity that led to the injury, he

---

[2] Unlike its federal counterpart, individual liability claims are cognizable under the New Mexico Human Rights Act ("NMHRA"). *Compare Butler v. City of Prairie Village, Kan.*, 172 F.3d 736, 744 (10th Cir. 1999); *with Sonntag v. Shaw*, 2001-NMSC-015, ¶ 13, 130 N.M. 238. Plaintiff, however, has not asserted NMHRA claims.

can be held personally liable. *Id.*

As relevant to the tort of retaliatory discharge, the Court finds the following facts to be true for purposes of this motion. On or about November 4, 2015, Walker laid his head on Gutierrez's lap while she sat on the couch, and he put his hand under her legs, an act that was unwelcome. (*See* Hr'g Tr. 16:10-17:9.) About ten days later, on or about November 14, 2015, Gutierrez was asleep in her bed and was awakened by Walker in her bed, grinding against her leg. (*Id.* at 17:10-20:14.) She pushed him off and screamed at him. (*Id.* at 20:15-19.) Later, he asked her if she wanted to cuddle, she responded, "no," and pushed him back out of her room. (*Id.* at 21:1-6.) Walker later told her it would not be a good idea to tell Henning because she would get fired since he was essentially Henning's boss. (*Id.* at 22:21-23:3.)

Walker began to try to get Henning to send Gutierrez home, even though she was needed in Peoria. (*See id.* at 24:4-13.) On December 4, 2015, Walker told her that he was worried about her commitment and continued to try to send her home. (*Id.* at 26:8-15.) Gutierrez responded that she did not want to return because she agreed to be in Peoria until April and had rented out her Albuquerque home. (*Id.* at 26:16-22.) On another occasion, Walker asked her to cuddle. (*Id.* at 28:17-20.) Afterwards, from December 7th to 17th, she was given no time off, no checks, and was opening and closing every night. (*Id.* at 28:21-29:4.) After Walker told her he had spies everywhere, she became very concerned. (*See id.* at 29:4-8.) Gutierrez went to the management in Peoria to inform them that Walker was trying to get rid of her and told them about the bed incident. (*Id.* at 29:8-18.)

Walker again told Henning to send Gutierrez home. (*Id.* at 30:22-31:1.) Henning told Gutierrez to try to make Walker happy. (*Id.* at 31:8-12.) Walker got Henning to send to Gutierrez a ticket home, and he wrote to Human Resources, falsely accusing her of drinking, fraternization,

10

and about missing alcohol. (*Id.* at 32:6-16.) Walker's wife was in charge of Human Resources for the company. (*Id.* at 32:17-20.)

Approximately two weeks after returning to Albuquerque, Gutierrez met with Henning and Robert Noland, the acting General Manager. (*See id.* at 32:21-34:20.) Henning informed her that Walker accused her of partying, bringing men to the apartment, just drinking, and being a mess. (*See id.* at 34:19-35:10.) After Gutierrez informed Henning about the November 14, 2015 incident with Walker, Henning got angry, and informed her that if she ran her mouth about what Walker did, then she wouldn't have a job. (*See id.* at 35:11-17; 37:9-38:2; Am. Compl. ¶ 36, ECF No. 77.) On January 8, 2016, Henning fired Plaintiff. (Hr'g Tr. 36:19-37:8.) He also informed her that he would not stand in the way of her unemployment unless she ran her mouth. (*Id.* at 38:3-13.)

Plaintiff seeks compensatory and punitive damages against Defendant Walker for disciplining her, treating her adversely, and firing her in retaliation for reporting to her supervisors about the sexual harassment, sexual assault, and creation of a hostile work environment. (Am. Compl. ¶ 65, ECF No. 77.) Based on the evidence presented at the hearing and the undisputed facts of the amended complaint, the Court finds that Plaintiff was terminated for having rejected Defendant Walker's sexual advances and for having reported unlawful sexual assault, sexual harassment, and creation of a hostile work environment by Defendant Walker. Her actions were authorized and encouraged by public policy, including by federal and state anti-discrimination statutes. Defendant Walker directed, controlled, approved, or ratified the activity that led to her termination. As a direct and proximate cause of Defendant Walker's actions against Plaintiff, she has and will continue to suffer damages and is entitled to compensatory damages.

Defendant Walker is therefore liable to Plaintiff for the tort of retaliatory discharge.

### C.  Count VII – Invasion of Privacy – False Light

New Mexico recognizes the tort of invasion of privacy based on "false light," which is closely related to the tort of defamation. *Andrews v. Stallings*, 1995-NMCA-015, ¶¶ 58-59, 119 N.M. 478. According to the Restatement (Second) of Torts, a defendant is subject to liability for invasion of privacy when the defendant

> gives publicity to a matter concerning another that places the other before the public in a false light …, if
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Restatement (Second) of Torts § 652E.

To recover for false light, the matter published about the plaintiff must not be true. Restatement (Second) of Torts § 652E, cmt. A. Additionally, for the false portrayal to be highly offensive to a reasonable person, the plaintiff should be "justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity." *Id.*, cmt. c. The tort of false light invasion of privacy requires "publicity." *Andrews*, 1995-NMCA-015, ¶ 61. According to the Restatement, "publicity" occurs when "the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Restatement (Second) of Torts § 652D, cmt. a.

Defendant Walker "made false statements pertaining to the reasons for Plaintiff's termination" (Am. Compl. ¶ 70, ECF No. 77), that "disparage her character and conduct" and "is highly offensive to a reasonable person" (*id.* ¶ 72). More specifically, Walker falsely told Gutierrez's former co-workers that on her work trip, she was just drunk and laying around naked in the shared residence, such that others in the shared residence would have to step over her naked body. (*See* Hr'g Tr. 41:7-19.) This false portrayal would be highly offensive to a reasonable person such that Gutierrez was justified in the eyes of the community in feeling seriously offended and

aggrieved by the publicity. Walker had knowledge of or acted in reckless disregard as to the falsity of the statements and the false light in which Gutierrez was placed. As a direct and proximate cause of Defendant Walker's actions against Plaintiff, she has and will continue to suffer damages and is entitled to compensatory damages.

Defendant Walker is therefore liable to Plaintiff for the tort of invasion of privacy – false light.

### D.  Compensatory Damages

Where liability is established, a plaintiff is entitled to the amount of money that will reasonably and fairly compensate her for any damages proved by the plaintiff to have resulted from the wrongful conduct. *See* N.M. U.J.I. 13-1801 & 13-1802. Compensatory damages include the value of lost earnings. N.M. U.J.I. 13-1803. Because retaliatory discharge claims are based upon principles of tort, a plaintiff may recover damages for emotional distress when a defendant is found liable for that tort. *See Chavez v. Manville Products Corp.*, 108 N.M. 643, 649-50, 777 P.2d 371 (1989). Regarding the invasion of privacy-false light tort, a plaintiff may also recover damages for emotional distress and humiliation and damages for injury to reputation. *Cf. Newberry v. Allied Stores, Inc.*, 108 N.M. 424, 429-30, 773 P.2d 1231 (1989) (discussing damages available for defamation).

As a result of the retaliatory discharge, Plaintiff suffered lost wages. At the time of the events in this case, Plaintiff had been promoted into lead server based on her high sales and minimal mistakes, and she had pride in her work. (*See* Hr'g Tr. 10:1-25.) Although Gutierrez's pay fluctuated, her average weekly pay while she worked at Marcello's near the time that she was fired was $1,000 each week. (*Id.* at 10:1-25, 43:18-24; Pl.'s Hr'g Ex. 1.)

After she was fired, Gutierrez's initial attempts to find employment were unsuccessful.

(*See* Hr'g Tr. 40:16-41:6.) She received unemployment benefits from February 2016 to July 2016 in the amount of $450.00 weekly, resulting in $11,000 in lost wages during that 20-week period. (*See id.* at 43:25-44:10; Pl.'s Hr'g Ex. 1.) From July 2016 to April 2017, Gutierrez worked at another steakhouse, making an average salary of $500 weekly for 38 weeks, resulting in $19,000 in lost wages. (*See* Hr'g Tr. 44:8-45:1; Pl.'s Hr'g Ex. 1.) She took a second job from April 2017 to December 2017, making $750 weekly, a difference of $250 per week from what she would have made at Marcello's. (*See* Hr'g Tr. 44:24-45:24; Pl.'s Hr'g Ex. 1.) Marcello's closed for business on or about April 15, 2017. (*See* Hr'g Tr. 51:15-52:3.) The Court finds that Plaintiff is entitled to lost wages up until the time Marcello's closed for business, at which point had she still been working at Marcello's, her employment would have ended. Therefore, Plaintiff's lost wages from February 2016 until approximately April 15, 2017, amount to $30,500 ($11,000 + $19,000 + $500 (the latter amount accounting for two weeks in April 2017 with the difference of $250/week pay).

In addition to lost wages, the Court finds that Plaintiff suffered emotional distress from the retaliatory discharge. (*See id.* at 61:10-62:7.) Prior to the incident here, Gutierrez loved her job. (*See id.* at 10:5-14, 60:12-15.) After being fired, she lost friends and the connection with people she had worked with for years. (*See id.* at 40:13-15.) She felt the stress of not knowing what to do next and having bills to pay and others dependent upon her. (*See id.* at 40:6-13.) As a result of Walker's actions, Gutierrez lost her confidence and it destroyed her personality; she became fearful, struggling to be assertive with management in new jobs and being less of a go-getter. (*See id.* at 52:12-54:18, 61:10-62:24.) Gutierrez suffered emotionally, breaking down and crying many times, and it continues to affect her. (*See id.*) The Court finds that the damages that may compensate Plaintiff for the emotional distress resulting from the retaliatory discharge tort amount to $30,500.

Plaintiff also suffered emotional distress because of the false statements and the false light in which she was placed by Walker. (*See* Hr'g Tr. 41:11-42:9.) The Court finds that the damages that may compensate Plaintiff for the additional emotional distress she suffered from the invasion of privacy-false light tort by Defendant Walker amount to $30,000.

The total compensatory damage award for which Defendant Walker is liable to Plaintiff amounts to $91,000.

### E. Punitive Damages

Punitive damages may be awarded against a defendant if the defendant's conduct was malicious, willful, reckless, wanton, fraudulent, or in bad faith. *See* N.M. U.J.I. 13-1827. The amount of punitive damages must be based on reason and justice taking into account all the circumstances. *Id.* The purpose of punitive damages is for punishment and to deter others from the commission of like offenses, and the amount awarded must be reasonably related to the injury and to any damages given as compensation. *Id.*

Plaintiff has proven that Defendant Walker's actions were intentional, wanton, malicious, and done with reckless disregard for Plaintiff's rights and she is entitled to punitive damages. The Court finds that Plaintiff is entitled to punitive damages against Defendant Walker in the amount of $91,000.

### F. Total Award

Consequently, the total amount of damages that are awarded to Plaintiff and against Defendant Walker is $182,000.00.

**IT IS THEREFORE ORDERED** that

1. Plaintiff's *Motion for Default Judgment* (**ECF No. 99**) is **GRANTED IN PART AND DENIED IN PART** as follows:

    a. Plaintiff's request for entry of judgment on her Title VII claims against Defendant Walker is **DENIED**.

    b. Plaintiff's request for entry of judgment for Plaintiff and against Defendant Walker on her claims for retaliatory discharge in violation of New Mexico tort law and for invasion of privacy – false light is **GRANTED**.

2. Plaintiff is awarded a total of **$182,000.00** against Defendant Robert Walker.

3. Plaintiff's Title VII claims against Defendant Walker are **DISMISSED**.

_____
SENIOR UNITED STATES DISTRICT JUDGE